IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

ENTERED
11/21/2016

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| NUVIRA HOSPITALITY, INC., | ) | CASE NO. 15-80432-G3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |

MEMORANDUM OPINION

The court has held an evidentiary hearing on confirmation of "Nuvira Hospitality Inc.'s First Amended Plan of Reorganization, Dated October 3, 2016" (Docket No. 47, as modified at Docket No. 63). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Nuvira Hospitality, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 30, 2015. (Docket No. 1). The instant case is a small business case. (Docket No. 33).

Debtor operates a 32-unit motel in Surfside Beach, Texas. Debtor's schedules indicate two secured creditors, Four Star Business, Inc. ("Four Star") and Brazoria County Appraisal

District; one priority creditor, the State of Texas; and two unsecured creditors, Ramesh Raj and Rohit Kumar.  (Docket No. 10).

Ramesh Raj, Debtor's president, testified that he purchased the property from Four Star or its principal, Abdul Panjwani, during 2013 for $775,000.  He testified that he paid $175,000 in cash.  On June 20, 2013, Raj executed a note, in the original principal amount of $600,000, payable to Four Star.  The note called for monthly payments of $7,122.11.  (Four Star Exhibit 1).  Raj testified that he transferred the property to Debtor shortly after he acquired the property.[1]

Raj testified that, after the sale was complete, he discovered that there were problems with the septic system and the walls of the building.  He testified that the septic system was leaking, and required complete replacement.  He testified that the State of Texas, through the Texas Commission on Environmental Quality ("TCEQ"), sought and obtained an order shutting down the motel until the septic system was replaced.  He testified that the walls of the motel began crumbling shortly after Debtor took possession of the property, such that the

---

[1]The parties dispute whether the transfer to Debtor was contemplated at the time of the sale from Four Star.  The court makes no finding on this issue.

2

drywall had to be replaced in 28 of the 32 units.[2]

Debtor filed suit in state court against Panjwani and Four Star, asserting claims, <u>inter alia</u>, for fraud, resulting from Debtor's purchase of the property.  (Docket No. 51).

Raj testified that he made payments to Four Star, although the motel was closed for several months, until he depleted his savings.  He testified that Debtor filed the petition in the instant case after Four Star posted the property for foreclosure.

Four Star filed two proofs of claim.  Each of the two proofs of claim states a claim in the amount of $575,703.89.  The first of the two proofs of claim asserts that the claim is secured.  The second of the two proofs of claim asserts that the claim is unsecured.  (Claims No. 2, 3).  Debtor has objected to both proofs of claim.  Debtor objects to Claim No. 2, the claim filed as secured, on grounds it is subject to offset based on Debtor's state law claims against Four Star as set forth in the lawsuit pending in state court.  Debtor objects to Claim No. 3 on grounds it is a duplicate of Claim No. 2.  (Docket No. 39).

On March 31, 2016, Four Star filed a motion for relief from stay, based on a lack of adequate protection.  (Docket No. 24).  After a contested final hearing, this court conditioned the

---

[2]Raj testified that one of the units is the residence of the manager, Rohit Kumar.

stay on Debtor's payment of interest due to Four Star under the note, the maintenance of insurance, payment of taxes, and the timely filing of a plan and disclosure statement.  (Docket Nos. 33, 34).

Debtor's monthly operating reports reflect that, prior to the entry of the court's order on Four Star's motion for relief from stay, Debtor had net cash flow as follows:

| Month | Net Cash Flow |
|---|---|
| December, 2015 | $1,790.58 |
| January, 2016 | ($2,253.81) |
| February, 2016 | $2,231.24 |
| March, 2016 | ($672.01) |
| April, 2016 | $3,025.44 |
| May, 2016 | $3,639.82 |
| June, 2016 | ($5,369.07) |
| July, 2016 | $534.34 |

(Docket Nos. 21, 22, 23, 28, 30, 31, 37, 38).

Raj testified that Debtor has made adequate protection payments as provided in the court's Judgment conditioning the automatic stay.  Debtor's two monthly operating reports covering periods after entry of the court's Judgment conditioning the automatic stay reflect net cash flow of ($4,638.03) for August, 2016, and $3,030.81 for September, 2016.  (Docket Nos. 42, 64).

4

Debtor filed a Chapter 11 plan in the instant case on September 26, 2016, the first business day after 300 days after the date of filing of the petition in the instant case. (Docket No. 43). The instant plan is the first amended plan, filed on October 3, 2016, and modified on November 3, 2016. (Docket Nos. 47, 63).[3]

The plan creates six classes. Class 1 contains the secured claim of Four Star. Class 2 contains the secured claim of the Brazoria County Appraisal District. Class 3 contains the claim of TCEQ. Class 4 contains non-insider unsecured claims. Class 5 contains insider unsecured claims. Class 6 contains the equity interest of the Debtor. (Docket No. 47).

Four Star filed ballots rejecting the plan in Class 1 and Class 4. (Docket Nos. 61, 62). Kumar submitted a ballot accepting the plan, in the amount of $6,800, in Class 4. Raj submitted a ballot accepting the plan, in Class 5. (Debtor's Exhibit 1).

Raj testified that he has paid the Class 2 claim in full. He testified that Debtor has reached agreement with TCEQ for treatment of its claim under the plan.

Debtor's financial projections are in evidence. Raj testified that he prepared the projections. The projections reflect that Debtor anticipates operating at a net loss each

---

[3]The plan modification relates to the treatment of TCEQ.

month from November, 2016 through October, 2018.  The average net monthly loss reflected in the projections is $4,431.25.  The projections provide for monthly payments to Four Star in the amount of $3,327.00.  (Docket No. 51-5).

The plan provides for payment of Four Star's claim in 120 equal monthly installments at 7.5% interest.  The plan provides for payment of interest only, until a determination is made as to allowance of Four Star's claim.  (Docket No. 47).

Raj testified that he anticipates contributing additional funds for operation of the Debtor's business to meet any shortfall in Debtor's income.  He testified that he earns income of $250,000 in his position as a managing director of a financial firm.  He testified that he could raise at least $80,000 on short notice.

Debtor presented no evidence as to the value of the property.

Four Star objects to confirmation, on grounds the plan is not feasible, is not fair and equitable as to Four Star, is not in the best interests of creditors, and was not proposed in good faith.

<u>Conclusions of Law</u>

Section 1129 of the Bankruptcy Code governs confirmation of a Chapter 11 plan.  It provides in pertinent part:

6

(a) The court shall confirm a plan only if all of the following requirements are met:

(3) The plan has been proposed in good faith and not by any means forbidden by law.

* * *

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or
(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests—

(A) such class has accepted the plan; or
(B) such class is not impaired under the plan.

* * *

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in

7

the plan.

* * *

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
(iii) for the realization by such holders of the indubitable equivalent of such

8

claims.

11 U.S.C. § 1129.

The plan proponent has the burden of proof as to compliance with Section 1129(a) by a preponderance of the evidence.  In re Briscoe Enters., Ltd. II, 994 F.2d 1160 (5th Cir. 1993), cert. den., 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993).

This court has generally found cause to dismiss cases, on grounds of a lack of good faith, in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute. See e.g., In re Starmark Clinics, LP, 388 B.R. 729 (Bankr. S.D. Tex. 2008); In re Antelope Technologies, Inc., Case No. 07-31159-H3-11 (Slip Op. Jan. 7, 2010); In re Kemper, Case No. 04-82663-G3-7 (Slip Op. May 18, 2006); In re Gamma Env. Services, Inc., Case No. 01-32689-H3-7 (Slip Op. July 18, 2001); In re Leslie, Case No. 98-35386-H3-11 (Slip Op. February 12, 1999).

The instant case involves a two party dispute between Debtor and Four Star with respect to the purchase price and condition of the Anchor Motel.  There is pending state court litigation between the parties to resolve their dispute.  Debtor filed the plan in the instant case on the last day possible under

the Bankruptcy Code.[4]  The plan provides for interest-only payments while Debtor continues its litigation against Four Star, either in this court or in state court.  The court concludes that Debtor has not met its burden of proof to demonstrate that the instant plan was filed in good faith.[5]

Section 506(a)(1) provides that an allowed claim of a secured creditor is a secured claim to the extent of the value of the creditor's interest in the estate's interest in the property.

To the extent Four Star's claim exceeds the value of the property, Four Star would have an unsecured claim.  Four Star filed a proof of claim asserting an unsecured claim.  Four Star filed a ballot rejecting the plan.  To the extent Four Star's unsecured claim exceeds $3,400, the class of unsecured creditors would reject the plan.[6]  The plan is not fair and equitable as to the class of unsecured creditors, if the class rejects the plan, because the equity holder of Debtor retains his interest.  Debtor

---

[4]Section 1121(e)(2) requires that the plan and disclosure statement in a small business case be filed not later than 300 days after the date of the order for relief--in the instant case, 300 days after the date of filing of the Chapter 11 petition.

[5]The court makes no conclusion on the question as to whether the instant case was filed in good faith.

[6]Section 1126(c) provides that a class of claims accepts the plan if the plan is accepted by the holders of at least two-thirds in amount and more than one-half in number of the allowed claims in the class.  Thus, a claim in excess of $3,400, voting against the plan, would be in excess of one-third of the claims in Class 4, and the class would reject the plan.

has not sought estimation of Four Star's unsecured claim in connection with confirmation.  The court concludes that Debtor has not met its burden of proof on the question of compliance with Sections 1129(a)(8) and 1129(b) of the Bankruptcy Code.

On the question of feasibility, Debtor's financial projections show a negative cash flow throughout the time period for which projections were prepared.  The projections do not take into consideration the possibility that the claim of Four Star may be allowed in full, such that payments of $7,122.11 per month would be required.  The only other evidence presented on the ability of Debtor to fund the payments required under the plan is Raj's testimony that he has income of $250,000 per year, and can raise $80,000 on short notice.  Raj's testimony was not supported by submission of Raj's personal financial statements, or anything providing that Raj was undertaking the obligation of making such payments.  The court concludes that Debtor has failed to meet its burden of proof on the question of feasibility.

In light of the Debtor's failure to meet its burden of proof as to several requirements for confirmation of the plan, the court concludes that confirmation should be denied.

Section 1121(e) of the Bankruptcy Code provides in pertinent part:

11

(e) In a small business case—

(2) the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and

(3) the time periods specified in paragraphs (1) and (2), and the time fixed in section 1129(e) within which the plan shall be confirmed, may be extended only if—

(A) the debtor, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;
(B) a new deadline is imposed at the time the extension is granted; and
(C) the order extending time is signed before the existing deadline has expired.

11 U.S.C. § 1121(e).

On the date of the hearing on confirmation, but after the hearing, Debtor filed a motion to extend the time to file a plan. (Docket No. 69). Debtor asserts that the time should be extended because the evidence presented at the confirmation hearing demonstrates that it is more likely than not that the court will confirm a plan within a reasonable period of time. In light of Debtor's failure to meet its burden of proof as to confirmation, the court concludes that Debtor has not demonstrated by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time.

12

The failure of a debtor to obtain confirmation of the plan in a small business case and failure to obtain an extension is cause for dismissal of the case.  In re Sanchez, 429 B.R. 393 (Bankr. D.P.R. 2010); In re Roots Rents, Inc., 420 B.R. 28 (Bankr. D. Id. 2009); In re Mojica, 2013 WL 2180740 (Bankr. D.P.R. 2013, Slip Op. 5/20/2013) ("Due to the wording of [Section 1121(e)(3)], if a small business plan is not confirmed within the deadline, the court has no choice other than to dismiss the case..."). See also In re Burgos, 510 B.R. 460 (Bankr. D.P.R. 2014) (describing Section 1121(e)(3) as a "drop dead" date.). The court concludes that the instant case should be dismissed, because the time to file a plan has expired.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on November 21, 2016.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE